---

### THE ELK et al.

(Circuit Court of Appeals, Third Circuit.  May 29, 1900.)

#### No. 8.

COLLISION—LIABILITY—EFFECT OF FAILURE TO KEEP PROPER LOOKOUT.

    A tug cannot be held liable to contribute to the damages caused by a collision in which her tow was injured, because of her failure to keep a proper lookout, where she was not otherwise in fault, and from the facts shown it appears that the omission in no manner contributed to the collision.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

Henry R. Edmunds, for appellant the Carbonero.
John F. Lewis, for appellant the A. R. Gray.
Horace L. Cheyney, for appellee the Elk.

Before ACHESON and DALLAS, Circuit Judges, and BRADFORD, District Judge.

BRADFORD, District Judge.  A libel was filed by Edward McIlvaine, master of the barge Elk, against the steam-tug Carbonero to recover damages resulting from a collision between the two vessels in the Delaware River on the night of December 9, 1895. Subsequently on the petition of the master of the Carbonero the steam-tug A. R. Gray was under rule 59 in admiralty made a party defendant. The Elk at the time of the collision was in tow of the Gray. The court below held that both the Carbonero and the Gray were at fault, and decreed that the damages sustained by the libelant should be equally divided between those vessels. (D. C.) 95 Fed. 846. We entirely agree with the learned judge below that the libelant was entitled to recover full damages, and further, that the Carbonero was at fault. It is unnecessary to recapitulate the evidence on these points. We

think, however, he was in error in decreeing any of the damages against the Gray. In the course of his opinion he says:

"Both the side and towing lights of the Gray were properly set and burning, and the captain was at the wheel; but there was no lookout either on the tug or on the barge and the barge displayed no lights. The Elk was low in the water, and neither her load nor herself obstructed the view of the lights upon the tug. There was no moon, but the night was not dark, and the lights of an approaching vessel could be seen for at least half a mile, and probably much farther. * * * With regard to the liability of the Gray, I see one point only upon which it can be rested, but of this there can be no doubt: she had no lookout either upon the barge or upon her own deck, and under the authorities such omission ordinarily is blamable negligence. I have been referred to no statute or rule that required the Elk to carry lights, lashed as she was to the Gray; but a lookout should have been stationed either upon the tug or upon the barge. Under the facts in proof it is impossible to say whether the collision would or would not have been avoided, if this had been done. The inquiry would be speculative, and therefore profitless; for present purposes it is enough to say that the Gray failed in a plain duty, and that an injury has occurred which might have been prevented if the duty had been performed. The Gray, therefore, must also be held liable for the collision."

The law is well settled that the absence of a special or proper lookout does not subject a vessel to liability for damages for collision, unless such absence has in fact contributed to the collision. In The Blue Jacket, 144 U. S. 371, 389, 390, 12 Sup. Ct. 718, 36 L. Ed. 477, the court said:

"It is well settled that the absence of a lookout is not material, where the presence of one would not have availed to prevent a collision. * * * The provision of article 24 of the act of March 3, 1885, is that a vessel is not to be exonerated from the consequences of any neglect to keep a proper lookout. It does not say that a vessel shall, because of not keeping a proper lookout, be visited with the consequences of a collision. If the collision does not result as a consequence of neglecting to keep a proper lookout, the vessel is not thereby made responsible for the consequences of the collision."

The circumstances of this case are such as to negative the idea that the omission to have a special lookout on the Gray brought about or in any manner contributed to the collision. The Carbonero could plainly see the lights on the Gray and the latter vessel could plainly see the lights on the former for a distance of at least half a mile, and the two vessels exchanged signals. On the facts disclosed it was wholly immaterial, so far as the collision in question is concerned, whether the Gray had or had not in addition to her crew a special lookout, and that vessel accordingly should not have been held responsible.

The decree of the District Court is reversed with direction to enter a decree for full damages and costs in favor of the libelant and against the claimant of the Carbonero in accordance with this opinion.